STEVENSON v. STEVENSON et al.

(Supreme Court, Appellate Division, Second Department. April 21, 1911.)

Appeal from Trial Term, Queens County.

Action by Charles R. Stevenson against Minnie Stevenson, as executrix, etc., of James A. Stevenson, deceased, and another. From a judgment in favor of the defendants and against the plaintiff, dismissing the complaint and granting a motion for an extra allowance and costs, plaintiff appeals. Modified, and affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

Willard N. Baylis, for appellant.

George F. Hickey (William E. Stewart, on the brief), for respondents.

PER CURIAM. Judgment modified, by striking therefrom the extra allowance, and, as thus modified, affirmed, without costs.

WOODWARD, J. (dissenting). The complaint in this action alleges that a partnership was formed on or about May, 1900, by and between Charles R. Stevenson, James A. Stevenson, and Thomas Penders, for the purpose of doing general contracting under the name of "James A. Stevenson," and that this partnership continued until April, 1907, when the defendant James A. Stevenson took possession of all of the assets; and the relief demanded is an accounting of the part-

nership affairs. The case was sent to a referee to hear, try, and determine, the defendants having put in a specific denial of each and all the facts alleged in the complaint; and the referee not only found against the plaintiff, but recommended an additional allowance of $250 on the theory that this was a difficult and extraordinary case, within the meaning of section 3253 of the Code of Civil Procedure, and such extra allowance now constitutes a part of the judgment. The plaintiff appeals from the judgment.

The vital question in the case is whether there was, in fact, a partnership established as between the parties. It is conceded that the parties were together for a period of nearly seven years, that during that time many contracts were taken and performed in the name of James A. Stevenson, and that during all of that time the plaintiff and defendant Penders drew sums of money without any definite settlement, and it is the contention of the defendant that the plaintiff and Penders were merely employés, taking as their compensation one-third of the profits resulting from these various contracts, aggregating hundreds of thousands of dollars, while the plaintiff insists that the arrangement between the parties was that of a copartnership. It is true that it nowhere appears in the testimony that there was anything said about a partnership between the parties; but it is equally true that it does not appear from the evidence that anything was ever said about the defendant Stevenson employing the plaintiff and Penders. There was a verbal arrangement, the parties went to work under that arrangement and remained together for about seven years, and the question here is whether that arrangement, with the performance on the part of the several parties for a long period of time, constituted an employment or a copartnership.

The plaintiff's testimony is to the effect that prior to May, 1900, he was employed as a bricklayer by the Standard Oil Company; that he was working with Penders, doing journeyman's work; that at that time his brother, James A. Stevenson, lived at Long Island City, and was engaged in the trucking business; that prior to May, 1900, he had several conversations with Penders; that Penders was the one who started it; that he was the go-between as to Penders and his brother; that Penders said it would be a good thing; that there was money in it; that we could make money; that Penders said that "my brother and I and he would make the building business go," and that he had 30 or 40 conversations along these lines with Penders, "and then I would see my brother, sometimes at the Standard Oil Works, and sometimes in his office, and sometimes on the street, and talk it over with him;" that about the time of these conversations with Penders he had several talks with his brother; that at a conversation in March or April, 1900, with his brother, the latter said "he would go into it, but he disliked it on account of Penders. Penders' name at that time was bad. He said Penders' name was bad. One phrase used: 'If we went in business, could we hold Penders down? Penders had judgments against him, and had had a building fall down, the First Ward School, and was in bad repute. He is a very smart man, but he has these things against him.' And he did not want Pen-

ders' name known in the business." The plaintiff further testified that:

"I told him it needn't be known in the business—his name. It could be done under the name of James A. Stevenson. We were to do contracting business, building business. Prior to May he said it was satisfactory to him, and he started to estimate on the work. Before we began actual work, he said that if the business went along we could change the name later, if we got along satisfactory. My brother said he would finance it, and Penders and I devote all our time to carrying on the work, get the orders, and seeing it was going on with. He would finance it. * * * He said that he was to finance it, and we would figure on the work and carry it on; that he would do his share, whatever he could, also finance it; that we would divide the profits or losses even, equally, Penders and he, and I—would be divided between us. We had a dozen or more such conversations prior to May, 1900, of that or similar purport."

The witness says he conveyed the results of these conversations to Penders, and that they finally entered into the performance of a contract for the completion of the Long Island Paint Works; this job resulting in a profit, etc. Penders, who answered jointly with the defendant Stevenson, and who is obviously hostile to the plaintiff, strongly corroborates this testimony, and states distinctly that, while there has been no settlement, he expects upon a final settlement to have the losses taken into consideration. The defendant Stevenson does not deny the general arrangement to do the work and to divide the profits; but it is his contention that each job was to stand by itself, and that only profits were to be divided, though he admits that if, upon any job, there was a loss, the plaintiff and Penders would lose their labor, which, in an economic and practical sense, is as much capital, in an arrangement of this kind, as defendant Stevenson's money.

There was certainly no specific bargain between the parties that they were to be employed by defendant Stevenson. They were investing their labor against his capital, while he continued to carry on his large trucking business, and the whole course of the business for seven years, during which time the plaintiff and Penders drew large sums of money, with no settlements of any consequence upon the basis of individual contracts, indicates clearly to us that the contract actually entered into and carried out was that of a copartnership, and not an employment. It is true that it appears from the testimony that on the first contract there was a settlement of basis of thirds; but Penders' testimony is to the effect that he was reluctant to enter into the arrangement, because he felt that he could not get along with the plaintiff and his brother, and that the first job was taken experimentally; that at the settlement on this first job the defendant Stevenson asked him how he liked the arrangement, if he thought they could get along together; and that from that time forward the business was conducted in the manner already indicated. This testimony, taken as a whole, seems to me entirely inconsistent with the idea of an employment, and wholly in harmony with the contention of the plaintiff that there was a copartnership existing between the parties.

I am persuaded, likewise, that this is not a proper case for an extra allowance. The case is in no proper sense difficult and extraordinary,

and, even if the plaintiff's contention was wrong, he ought not to have been burdened with an extra allowance, in the nature of a penalty.

· The judgment and order appealed from should be·reversed, and a new trial granted.

THOMAS, J., concurs.